UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
_____

Mark A. Carlson,

    Plaintiff,

                                     Civ. No. 09-608 (RHK/JJG)
                                     **MEMORANDUM OPINION**
                                     **AND ORDER**

v.

Twin City Fire Insurance Co.,

    Defendant.
_____

Edward E. Beckmann, Fafinski Mark & Johnson, PA, Eden Prairie, Minnesota, for Plaintiff.

Paula M. Ketcham, Schiff Hardin & Waite, Chicago, IL, Laura J. Hanson, Meagher & Geer, PLLP, Minneapolis, Minnesota, for Defendant.
_____

## INTRODUCTION

Plaintiff Mark A. Carlson filed this declaratory-judgment action against Defendant Twin City Fire Insurance Co. ("Twin City"), seeking to establish his entitlement to insurance coverage under a policy issued by Twin City. Twin City now moves to dismiss. For the reasons set forth below, the Court will grant the Motion.

## BACKGROUND

**I.    Minnesota Mailing Solutions, AIMED, and the PAC**

Carlson is the president of Minnesota Mailing Solutions ("Minnesota Mailing"), which served as a dealer for Hasler, Inc., "a manufacturer of postal equipment and related products and services." (Compl. ¶¶ 1, 4.) The Association of Independent Mailing

Equipment Dealers ("AIMED") is "a non-profit association organized for the purpose of advancing the interests of independent dealers of Hasler, Inc." postal equipment. (Id. ¶¶ 3-4.) Carlson was a member of AIMED and served on its Executive Committee as well as other committees. (Id. ¶ 5.)

During his work with AIMED, Carlson participated on a "committee that was charged with formulating a response to Hasler's Online Services initiative." (Id. ¶ 10.) However, in early 2007, Hasler, Inc. ended its communications with this committee, stating it would prefer "to interact with its dealers through its committee comprised of Hasler management and representative dealers." (Id. ¶ 11.) This committee was called the Presidential Advisory Council (the "PAC"). (Id.)

"The PAC [was] comprised of key dealers and members of Hasler's corporate management team." (Def. Mem. Ex. B ¶ 9.)[1] Each dealer on the PAC was to "serve as a spokesperson for a respective dealer group -- soliciting and sharing feedback with Hasler." (Id. ¶ 10.) Carlson was appointed by Hasler, Inc. to serve on the PAC because of his AIMED committee membership and because he had "affirmatively represented . . . that he would never sell his company to Hasler's dominant competitor, Pitney Bowes."

---

[1] Generally, a district court does not consider matters outside the pleadings on a motion to dismiss. However, the court may consider "public records, materials that do not contradict the complaint, [and] materials that are 'necessarily embraced by the pleadings.'" Noble Sys. Corp. v. Alorica Cent., LLC, 543 F.3d 978, 982 (8th Cir. 2008) (citation omitted). In this case, Twin City has attached to its memorandum the insurance policy at issue and the complaint in the underlying lawsuit for which Carlson seeks coverage. Both of these documents are "necessarily embraced" by the pleadings and will be considered. However, the Declaration of Barbara Price submitted by Carlson will not be considered. This Declaration does not identify who Barbara Price is and counsel for Carlson conceded during oral argument that it is "superfluous" and unnecessary to supplement Carlson's Complaint. More importantly, this Declaration is not "necessarily embraced" by the pleadings.

(Id ¶ 11; Compl. ¶ 11.) At PAC meetings held in April and October 2007, proprietary information was disclosed and distributed. (Def. Mem. Ex. B ¶¶ 12-16.)

## II. The Hasler Action

On January 3, 2008, Hasler, Inc. filed a lawsuit against Carlson alleging breach of fiduciary duty, misrepresentation, and breach of contract in connection with his participation on the PAC (the "Hasler Action"). (Id. ¶¶ 21-39; Compl. ¶ 14.) This lawsuit claimed that while serving on the PAC, Carlson negotiated an agreement with Pitney Bowes "to sell a substantial portion of the assets of Minnesota Mailing Solutions so [he] could exclusively engage in, among other things, the distribution, sale, and servicing of Pitney Bowes mailing equipment." (Def. Mem. Ex. B ¶ 18.) Specifically, the Hasler Action asserted three claims: (1) that serving on the PAC while negotiating this deal was a breach of fiduciary duty; (2) that Carlson's statements that he would not sell his business to Pitney Bowes constituted actionable misrepresentation; and (3) that Carlson's use of confidential Hasler, Inc. information disclosed during PAC meetings constituted a breach of contract. (Id. ¶¶ 21-39.)

## III. The Policy

Twin City issued a Nonprofit Directors and Officers Liability Insurance Policy (the "Policy") to AIMED. (Compl. ¶ 3.) This Policy was in force at all times relevant to this action. (Id.)

The "Coverage" provision of the Policy states that: "[t]he **COMPANY** shall pay on behalf of an **INSURED** all **CLAIMS EXPENSES** and **DAMAGES** that the

3

**INSURED** becomes legally obligated to pay for any **CLAIM(s)** first made against the **INSURED** for a <u>**WRONGFUL ACT(s)** which arise solely out of the discharge of an **INDIVIDUAL INSURED'S** duties on behalf of [AIMED]</u>." (Def. Mem. Ex. A (emphasis added).) The phrase "**INDIVIDUAL INSURED**" is defined as "[a]ny past, present or future director, officer, trustee, employee, volunteer or member of any duly constituted committee of [AIMED], but only with regard to <u>**WRONGFUL ACTS** which arise solely out of the discharge of the **INDIVIDUAL INSURED'S** duties on behalf of [AIMED]</u>." (<u>Id.</u> (emphasis added).) Twin City does not deny that Carlson is an "**INSURED**" under the Policy.

Carlson notified Twin City of the Hasler Action and sought coverage for his defense, which was denied. (Compl. ¶ 16.) After the lawsuit was settled, Carlson filed the instant action, seeking a determination that the Policy covers his defense, including fees and costs, in the Hasler Action. In addition, Carlson seeks damages for breach of contract and breach of the duty of good faith and fair dealing.

## STANDARD OF DECISION

To avoid dismissal under Rule 12(b)(6), a complaint must include "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" <u>Ashcroft v. Iqbal</u>, __ U.S. __, 129 S. Ct. 1937, 1940 (2009) (quoting <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." <u>Id.</u> at 1949. When reviewing a motion to

4

dismiss, the complaint must be liberally construed, assuming the facts alleged therein as true and drawing all reasonable inferences from those facts in the plaintiff's favor. Twombly, 550 U.S. at 555. A complaint should not be dismissed simply because a court is doubtful that the plaintiff will be able to prove all of the factual allegations contained therein. Id. at 556. Accordingly, a well-pleaded complaint can survive a motion to dismiss "'even if it appears that a recovery is very remote and unlikely.'" Id. (citation omitted).

## ANALYSIS

**I.  Choice of Law**

State law governs the interpretation of insurance policies. Nat'l Union Fire Ins. Co. v. Terra Indus., Inc., 346 F.3d 1160, 1164 (8th Cir. 2003). According to Twin City, there is a choice-of-law issue presented in this case because both Minnesota and California law could arguably apply. (Def. Mem. at 10 n.6.) Nevertheless, Twin City asserts that the choice-of-law issue need not be addressed by the Court because "there is no conflict between California and Minnesota law on any legal issue that could determine the outcome" of this Motion. (Id.) Carlson does not address this choice-of-law issue.

Applying Minnesota's choice-of-law principles, the Court finds no conflict between Minnesota and California law on any legal issue presented by this Motion, and therefore, a choice of law need not be made. See W.S.A., Inc. v. Liberty Mut. Ins. Co., 7 F.3d 788, 791 n.2 (8th Cir. 1993) (quoting Hague v. Allstate Ins. Co., 289 N.W.2d 43, 46-47 (Minn. 1978)) (holding that "it is unnecessary to make a choice of law unless one

state's law would be 'outcome determinative' by reason of an actual conflict."). For the purposes of this Motion, the Court will apply Minnesota law.

## II. Carlson's "Wrongful Acts" are not covered by the Policy

The interpretation of an insurance policy is a question of law. <u>Watson v. United Servs. Auto. Ass'n</u>, 566 N.W.2d 683, 688 (Minn. 1997). When an insurance policy's language is unambiguous, the Court interprets that language "in accordance with its plain and ordinary meaning." <u>Ill. Farmers Ins. Co. v. Glass Serv. Co.</u>, 683 N.W.2d 792, 799 (Minn. 2004). An insurance policy term is unambiguous if it is susceptible to only one reasonable interpretation. <u>Id.</u>

Carlson asserts that the "Wrongful Acts" alleged in the Hasler Action are covered by the Policy because he "advanced dealer concerns regarding Online Services in PAC meetings and reported back to the AIMED Board with Hasler's response." (Mem. in Opp'n at 7.) Stated simply, Carlson argues that because he was discharging a duty to AIMED by serving on the PAC, he is covered for all wrongful conduct done during that service. The Court does not agree.

Under the Policy, coverage is limited to wrongful acts "which arise <u>solely</u> out of the discharge of [Carlson's] duties on behalf of [AIMED]." (Def. Mem. Ex. A (emphasis added).) In the Hasler Action, Carlson was charged with breach of fiduciary duty, misrepresentation, and breach of contract. These claims arose out of Carlson's negotiations with Hasler, Inc.'s dominant competitor, his representations made prior to his PAC membership, and his use of confidential Hasler, Inc. information. This wrongful

conduct did not arise out of Carlson's service on the PAC, but arose out of his personal business dealings. Moreover, this wrongful conduct was not done "on behalf of [AIMED]," but rather on behalf of Carlson and Minnesota Mailing. Therefore, the Hasler Action claims, on their face, are outside the reasonable parameters of the Policy.

The facts here are comparable to those in <u>Beck v. American Casualty Company</u>, Civ. A. No. MO-88-CA-303, 1990 WL 598573 (W.D. Tex. April 12, 1990). In <u>Beck</u>, purchasers of First Savings and Loan Association (the "Association") stock brought suit against several defendants who served as shareholders and directors of the Association. <u>Id.</u> at *14. The allegations were expressly made against the defendants in their capacity as inside shareholders, not as directors. <u>Id.</u> The court held that the relevant insurance policy provided no coverage for the defendants' defense because its scope was limited to "any matter claimed against [Directors and Officers] <u>solely</u> by reason of them being Directors or Officers of the Association." <u>Id.</u> at *14-15 (emphasis added). Similarly, the Hasler Action did not assert its claims against Carlson in his capacity as an AIMED representative, but in his individual capacity. Therefore, the Policy provides no coverage.

Even if the wrongful conduct alleged in the Hasler Action arose in part out of Carlson's discharge of his duties to AIMED, the claims are nevertheless outside the reasonable parameters of the Policy because the wrongful conduct alleged did not "arise <u>solely</u>" out of the discharge of his duties to AIMED. The word "solely" means "to the exclusion of alternate or competing things." <u>Neumann v. AT&T Commc'ns, Inc.</u>, 376 F.3d 773, 783 (8th Cir. 2004) (quoting <u>Webster's New Int'l Dictionary</u> 2168 (3d ed.

7

1993)). Carlson's duty to AIMED while on the PAC was to receive and communicate information regarding Hasler, Inc.'s Online Services initiative, but the wrongful conduct did not "arise solely out of the discharge" of this duty. (Def. Mem. Ex. A (emphasis added).) Carlson's alleged wrongful conduct also arose out of the discharge of his duties to Minnesota Mailing as described above.[2]

In Federal Savings & Loan Insurance Corporation v. Mmahat, 97 B.R. 293 (E.D. La. 1989), a defendant serving as an attorney and a director for a company was charged with malpractice and breach of fiduciary duty when he used his position on the board of directors to further his legal business. The insurance policy under which the defendant sought coverage defined "wrongful acts" as those acts "by the Directors or Officers in the discharge of their duties solely in their capacity as Directors or Officers." Id. at 298 (emphasis added). Because the liability of the defendant arose "in the context of his dual role as director and attorney" the court questioned "whether the loss at issue [arose] 'solely' from his capacity as director." Id. at 299. Carlson, like the defendant in Mmahat, "used his position on the [PAC] in furtherance of his [personal] business." Id. Therefore, his wrongful conduct did not "arise solely" out of the discharge of Carlson's duties on behalf of AIMED.

**III.     McAninch does not support a finding of coverage**

Carlson relies heavily on McAninch v. Wintermute, 491 F.3d 759 (8th Cir. 2007), in opposing the instant Motion. In McAninch, a shareholder and director of a bank was

---

[2] Counsel for Carlson acknowledged during oral argument that Carlson sat on the PAC on behalf of AIMED and Minnesota Mailing.

covered under the bank's director and officer liability insurance policy ("D & O policy"). Id. at 761. The D & O policy required the insurance company to indemnify directors for "any Wrongful Act [done] solely in their capacities as Director or Officer or Employee of the Bank." Id. at 761-62 (emphasis added). The district court held that the director, charged with several counts of criminal conduct, was not covered under the D & O policy because "she did not act solely in her capacity as a director." Id. at 765.

The Eighth Circuit reversed. First, it noted that the defendant's criminal conduct was alleged in the indictment as being "undertaken as a director," and therefore was perpetrated in her director capacity. Id. at 768. Second, the court rejected the district court's reasoning that the D & O policy only covered charges resulting from director "status," but not charges resulting from a director's "wrongful acts." Id. at 769. Finally, the court noted that coverage existed, despite the fact that the director had acted in her capacity as a director *and* a shareholder, because her "dual capacity" did not relate to or facilitate the wrongful conduct. Id. at 772.

McAninch is distinguishable on several grounds. First, the McAninch defendant sought coverage for claims expressly asserted against her as a "director." Here, the Hasler Action claims are asserted against Carlson in his individual capacity, not in his capacity as an AIMED representative. Second, there is no issue here as to whether the Policy covers "wrongful acts" as well as legal claims based on director "status." Twin City does not deny that the Policy provides coverage for wrongful acts. Finally, unlike the defendant in McAninch, Carlson's dual capacity *did* facilitate the charged

9

wrongdoing. In McAninch, the director's dual capacity was that of a director and shareholder of the same company. Here, Carlson's dual capacity is that of an AIMED representative and owner of Minnesota Mailing. Because Carlson served on the PAC as an AIMED representative, he was able to obtain and utilize confidential Hasler, Inc. information as the owner of Minnesota Mailing. Therefore, Carlson's dual capacity is relevant and indicates that the alleged wrongful behavior did not "arise solely" out of Carlson's discharge of duties on behalf of AIMED.

## IV. Twin City did not have a duty to defend

Just as Twin City does not have a duty to indemnify Carlson, neither did it have the duty to defend Carlson when the Hasler Action was filed. An insurer's duty to defend is broader than the duty to indemnify in three ways: "(1) the duty to defend extends to every claim that 'arguably' falls within the scope of coverage; (2) the duty to defend one claim creates a duty to defend all claims; and (3) the duty to defend exists regardless of the merits of the underlying claims." Wooddale Builders, Inc. v. Me. Cas. Co., 722 N.W.2d 283, 302 (Minn. 2006) (citation omitted). An insurer seeking to avoid its duty to defend has the burden of demonstrating that all claims fall outside the scope of the insurance policy. Metro. Prop. & Cas. Ins. Co. v. Miller, 589 N.W.2d 297, 299 (Minn. 1999). Thus, there is no duty to defend if "the facts are such that there is no coverage under the policy for any resulting liability." State Farm Fire & Cas. Co. v. Williams, 355 N.W.2d 421, 424-25 (Minn. 1984) (internal quotation marks and citation omitted).

"Generally, the insurer's obligation to defend is determined by comparing the allegations of the complaint with the relevant policy language." Garvis v. Employers Mut. Cas. Co., 497 N.W.2d 254, 256 (Minn. 1993). Here, as described above, the face of the Hasler Action complaint makes clear that the wrongful conduct did not "arise solely out of the discharge of [Carlson's] duties on behalf of [AIMED]." In fact, AIMED is not mentioned in the Hasler Action complaint. Thus, because the pleadings cannot give rise to a claim arguably within the scope of the Policy, Twin City had no duty to defend.

**V.      Illusory coverage and reasonable expectations**

The doctrines of illusory coverage and reasonable expectations do not provide coverage to Carlson. The doctrine of illusory coverage is "an independent means to avoid an unreasonable result when a literal reading of a policy unfairly denies coverage." Jostens, Inc. v. Northfield Ins. Co., 527 N.W.2d 116, 118 (Minn. Ct. App. 1995). This doctrine "is best applied" when a "premium is specifically allocated to a particular type . . . of coverage and that coverage turns out to be functionally nonexistent." Id. at 119. "The doctrine of reasonable expectations protects the objectively reasonable expectations of insureds even though painstaking study of the policy provisions would have negated those expectations." Id. at 118. However, when policy language is clear and unambiguous, it negates "any legitimate expectation" of coverage. Id.

The coverage provided by the Policy is not illusory. There are numerous scenarios in which the Policy could provide coverage. For example, if Carlson were charged with gross negligence in the making of a strategic decision on behalf of AIMED, such

11

wrongdoing would "arise solely" out of the discharge of his AIMED duties. Moreover, Carlson's "reasonable" expectations cannot provide coverage as he "could not have been under more than a momentary delusion that the policy afforded coverage" given its unambiguous language. Id.

In sum, the plain and unambiguous language of the Policy makes clear that Carlson is not entitled to coverage under the Policy for any claim alleged against him in the Hasler Action; accordingly, Twin City did not have a duty to defend. Moreover, Carlson cannot avail himself to the doctrines of illusory coverage or reasonable expectations.

## CONCLUSION

Based on the foregoing, and all the files, records, and proceedings herein, **IT IS ORDERED** that Twin City's Motion to Dismiss (Doc. No. 8) is **GRANTED**; Carlson's Complaint (attached as Ex. A, Doc. No. 1) is **DISMISSED WITH PREJUDICE**.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Date: June 23, 2009
s/Richard H. Kyle
RICHARD H. KYLE
United States District Judge